UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

In the Matter of Establishment Inspection of      **REPORT AND**
BUFFALO RECYCLING ENTERPRISES, LLC     **RECOMMENDATION**
HILDA SOLIS, Secretary of Labor,
United States Department of Labor,     10-MC-00072(A)(M)

                      Petitioner,

    v.

BUFFALO RECYCLING ENTERPRISES, LLC
and FRED DOXBECK, General Manager for
Buffalo Recycling Enterprises, LLC,

                      Respondents.
_____

## INTRODUCTION

        This proceeding has been referred to me by Hon. Richard J. Arcara for decision on non-dispositive motions and the preparation of a Report and Recommendation on dispositive motions [3].[1] Before me are petitioner's motion [4] for an order of civil contempt against respondents (collectively referred to as "Buffalo Recycling") for violating an inspection warrant issued pursuant to the Occupational Safety and Health Act, 29 U.S.C. §657(a), *et. seq.*, and Buffalo Recycling's motion to quash the warrant [12].

        My authority with regard to petitioner's motion for an order of civil contempt is limited to certifying the facts to Judge Arcara for further proceedings. *See* 28 U.S.C. §636(e)(6)(B)(iii). Buffalo Recycling's motion to quash is "a dispositive matter setting forth all the relief requested, not a pretrial matter". United States v. Bell, 57 F. Supp.2d 898, 901 (N.D.Cal. 1999).

---

[1]     Bracketed references are to CM-ECF docket entries.

Oral argument was held before me on January 26, 2011 [20]. For the following reasons, I recommend that the motion for an order of civil contempt be denied, and that the motion to quash the warrant be granted, without prejudice to petitioner's right to apply for another warrant.[2]

**BACKGROUND**

On December 13, 2010, I signed an inspection warrant [4-1] authorizing petitioner to inspect Buffalo Recycling's entire facility for evidence of OSHA violations. Petitioner applied for the warrant *ex parte* (as authorized by 29 C.F.R. §1903.4), and OSHA compliance officer Robert Kirchgessner stated that the application was based upon "a general administrative plan . . . setting forth the following inspection priorities: imminent danger, fatality/catastrophe investigations, investigations of complaints/referrals, and programmed inspections. I have been advised that there were no unassigned imminent danger or fatality/catastrophes at that time, and therefore, this accident referral was assigned in its proper turn". Kirchgessner affidavit [12], p.65, ¶4.

OSHA's Field Operations Manual ("FOM") [17-2] defines a "referral" as an "allegation of a potential workplace hazard or violation" received from various sources, including a local police department. Id., §I(A)(6)(d). Mr. Kirchgessner stated that on October 7, 2010, OSHA's Buffalo area office had received a report from the Buffalo Police Department indicating that a Buffalo Recycling employee had suffered lacerations under his left arm while

---

[2] Identical motions have been filed in a related proceeding (10-MC-73-A) with regard to a second inspection warrant, and the parties have made the same submissions in both proceedings. Therefore, my reasoning in this Report and Recommendation will apply to that proceeding as well.

operating machinery at the facility. Kirchgessner affidavit [12], p.66, ¶5. That same day, Mr. Kirchgessner inspected the scene of the accident (id., ¶6), and observed four employees cleaning up a trail of blood on the floor (id). Based upon that observation, he made another "referral to Industrial Hygienist Jacki Lamb-Anderson . . . to conduct a health inspection at the facility". Petitioner's Memorandum of Law [18], pp.2-3.

On November 8, 2010, Mr. Kirchgessner and Ms. Lamb-Anderson interviewed a Buffalo Recycling employee, who "confirmed the presence of contaminated sharps; perceived high noise levels . . . lack of a fully implemented lock out, tag out program . . . lack of required blood borne pathogen training . . . no knowledge of a written Exposure Control Program for the facility; and concerns regarding personal protective equipment, such as gloves and appropriate safety glasses." Kirchgessner affidavit [12], ¶12, pp. 69-70.

When Buffalo Recycling refused to comply with the warrant, petitioner brought this motion for an order of civil contempt. In response, Buffalo Recycling moved to quash the warrant, arguing (*inter alia*) that petitioner had not furnished probable cause for a search of the entire facility. Buffalo Recycling's Memorandum of Law [13], pp.9-10. Since I agree that the warrant is overbroad, I find it unnecessary to reach Buffalo Recycling's alternative arguments.

## ANALYSIS

**A.     Buffalo Recycling May Challenge the Warrant in this Court.**

Petitioner argues that "if OSHA executes the warrant by conducting an inspection, an employer cannot go to a district court for review but must exhaust its administrative remedies in order to challenge the validity of the warrant." Petitioner's

Memorandum of Law [18], p.11. However, that rule does not apply where, as here, the warrant has not yet been executed. *See* Matter of Gould Publishing Co., 934 F.2d 457, 459 (2d Cir.1991) ("We express no opinion as to whether exhaustion would be required when the warrant has not yet been executed. We note, however, that a number of Circuits have held that an employer may obtain pre-exhaustion review in this situation").

Moreover, the fact that petitioner seeks to hold Buffalo Recycling in contempt for resisting the warrant furnishes an additional basis for its review by this court. *See* Babcock and Wilcox Co. v. Marshall, 610 F.2d 1128, 1135 (3d Cir. 1979) ("Direct review of the issuance of a civil warrant may be obtainable before the inspection by resisting entry, moving to quash the warrant, [and] risking contempt"); 17B Federal Procedure, Lawyers Edition, §42:2384 ("An employer may also wait until being presented with the warrant and refuse to permit an inspection . . . in which case, it may raise the issue of the validity of the warrant in a subsequent civil contempt proceeding").

**B.   Petitioner Failed to Show Probable Cause for an Inspection of the Entire Workplace.**

"To obtain an OSHA inspection warrant, the Secretary need not show probable cause in the criminal sense . . . . Instead, the Secretary need only establish administrative probable cause, which is tested by a standard of reasonableness, requiring the magistrate or judge to balance the need to search against the invasion in which the search entails . . . . A]dministrative probable cause justifying the issuance of an OSHA inspection warrant may be based either on 1) specific evidence of an existing violation; or 2) a showing that reasonable

legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment." West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 957 (11th Cir. 1982); In re Crider Poultry, Inc., 2010 WL 1524571, *4 (S.D.Ga. 2010), Report and Recommendation adopted, 2010 WL 1524584 (S.D.Ga. 2010).

Noting that her "entitlement to an inspection warrant does not depend on a demonstration of probable cause to believe that violations of the OSH Act exist on the premises" (petitioner's Memorandum of Law [18], p.7), petitioner based her warrant application on an administrative plan, rather than on specific evidence of a violation. "[T]he initial safety inspection was prompted by a referral by the Buffalo Police Department informing OSHA that an employee had been injured by machinery at respondent's facility. When the safety inspector Robert Kirchgessner began his inspection, he observed conditions with regard to the handling of blood that caused him to make an internal referral for a health inspection . . . . [T]hese two referrals were processed in accordance with OSHA's administrative procedures, set forth in the Field Operations Manual ('FOM'). The order of priorities set forth in the FOM constitute the neutral administrative plan for handling all types of OSHA inspections, including complaints and referrals". Petitioner's Memorandum of Law [18], pp.5-6.[3]

That "order of priorities", which is set forth in §IV(B) of the FOM ([17-1], p.2) distinguishes between "programmed" and "unprogrammed" inspections. "OSHA conducts both programmed general administrative inspections - known in the bureaucratic argot that OSHA so readily attracts as 'full-scope' or 'wall-to-wall' inspections - and more focused efforts pinpointed

---

[3] Petitioner's warrant application did not furnish any evidence, much less "specific" evidence, of violations either with respect to the machinery accident or with respect to the blood spill.

to threats of imminent danger." Irving v. United States, 162 F.3d 154, 162 (1st Cir. 1998), cert. denied, 528 U.S. 812 (1999). "Programmed Inspections are carried out in accordance with criteria based upon accident experience and the number of employees exposed in particular industries." Marshall v. Barlow's, Inc. 436 U.S. 307, 321, n.17 (1978). "A 'programmed' inspection is one 'scheduled based upon objective or neutral selection criteria . . . . The worksites are selected according to national scheduling plans for safety and for health under local, regional, and national special emphasis programs.' OSHA FOM §2-9. *All other inspections are 'unprogrammed*." Crider Poultry, 2010 WL 1524571, *6 (emphasis added).

"Unprogrammed" inspections are "'[i]nspections in which alleged hazardous working conditions have been identified at a specific worksite . . . . This type of inspection responds to imminent dangers, fatalities/catastrophes, complaints and referrals.'" Industrial Steel Products Co. v. Occupational Safety & Health Administration, 845 F.2d 1330, 1332, n.1 (5th Cir.1988), cert. denied, 488 U.S. 993 (1988). Petitioner's warrant application was based on an unprogrammed inspection. *See* Kirchgessner affidavit ([12], p.65), ¶4 ("I have been advised that there were no unassigned imminent danger or fatality/catastrophes at that time, and therefore, this accident referral was assigned in its proper turn").

Whereas "programmed searches require less scrutiny from the magistrate who issues the warrant to inspect the facility", Matter of Samsonite Corp., 756 F.Supp. 498, 499 (D.Colo.1991), "[u]nprogrammed inspections are not initiated by neutral criteria and could become tools of harassment". Id. This is particularly true in cases involving an inspection of the entire facility. "The intrusiveness of a full scope inspection is not insignificant. They often extend over a period of weeks . . . . Moreover, they create a disruption, inconvenience, and lost

employee time." Donovan v. Sarasota Concrete Co., 693 F.2d 1061, 1069, n.9 (11th Cir. 1982); Crider Poultry, 2010 WL 1524571, *7.

For that reason, although "administrative plan searches may properly extend to the entire workplace . . . . a complaint inspection must bear an appropriate relationship to the violation alleged in the complaint." Trinity Industries, Inc. v. Occupational Safety and Health Review Commission, 16 F.3d 1455, 1460 (6th Cir. 1994); Sarasota Concrete, 693 F.2d at 1068. "The reasonable administrative plan envisioned by *Barlow's* [which would allow for a full-scope inspection] may not include, even as one of several elements, an employee complaint." Crider Poultry, 2010 WL 1524571, *7.

Since the warrant application was not based upon a programmed search (which would allow a full-scope or "wall to wall" inspection), in order to justify a search of the entire facility the application had to demonstrate a basis justifying the search of that breadth. "If a general warrant is sought, there should be some evidence presented to the magistrate supporting the belief by OSHA that the deleterious conditions may also be present in other portions of the facility." Donovan v. Fall River Foundry Co., Inc., 712 F.2d 1103, 1108 (7th Cir.1983).

Although "a specific complaint may allege a violation which permeates the entire workplace so that a full scope inspection is reasonably related to the complaint" (Sarasota Concrete, 693 F.2d at 1069), in this case neither of the "referrals" (relating to the machine accident and the blood spill) nor the employee complaint (*see* Lamb-Anderson affidavit ([12], pp.50-51, ¶9), Kirchgessner affidavit ([12], pp.69-70, ¶12)) indicate that the alleged violations permeate the entire workplace.

Accordingly, I conclude that there was no basis for the inspection warrant to authorize a search of the entire workplace, and that Buffalo Recycling cannot be held in contempt for refusing to comply with the warrant.

**CONCLUSION**

For these reasons, I recommend that petitioner's application for an order of civil contempt [4] be denied, and that Buffalo Recycling's motion to quash the inspection warrant [12] be granted, without prejudice to petitioner's right to apply for another warrant.[4]

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 18, 2011(applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

---

[4] "[U]nlike a criminal proceeding where a defendant may 'flush' evidence, 'the risk that the employer will correct the violations before the inspector reappears is not really seen as a problem: if the violations are permanently corrected, then the ultimate objective of the inspection system has been achieved.'" Crider Poultry, 2010 WL 1524571, *4 (*quoting* 5 Wayne R. LaFave, Search and Seizure §10.2(e) (4th ed.2009)).

-8-

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of the Local Rules of Civil Procedure for the Western District of New York, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: March 1, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge